HECTOR FEZANDIE, EXECUTOR, ESTATE OF FELIX FEZANDIE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6381. Promulgated July 13, 1928.

*George M. Morris, Esq.*, for the petitioner.
*D. D. Shepard, Esq.*, for the respondent.

1326

1328

1330

## OPINION.

Love: There is but one issue in this case. It relates to certain funds on deposit and accounts receivable, the property of decedent on April 6, 1917, when war was declared between Germany and the United States of America. One of the debts was owing by an Austrian corporation; all of the others were owing by German nationals.

In the return filed by decedent for the calendar year 1920 no deduction was claimed for the loss of the deposits and accounts receivable. It is now the contention of petitioner that the return was in error and the entire amount of the deposits and accounts receivable should have been allowed by respondent as a deduction

from income. In the original petition claim was made for the deduction under the provisions of section 214 (a) (4) and (5) of the Revenue Act of 1918, applying to "losses." In an amended petition filed upon motion duly made and granted, petitioner claims the deduction under the provisions of section 214 (a) (7) specifically applying to "debts" ascertained to be worthless and charged off within the taxable year. The importance of the distinction lies in the fact that the statute permits bad debts to be deducted in the year in which ascertained to be bad, whereas it provides that losses are deductible only in the year in which suffered. *Electric Reduction Co.* v. *Lewellyn*, 11 Fed. (2d) 493; 275 U. S. 243; *Emil Stern, et al.*, 5 B. T. A. 89; *Parker Wire Goods Co.*, 8 B. T. A. 448.

It does not appear that the debtors were insolvent. The debts are claimed to have been practically worthless at the end of 1920 by reason of the situation which arose out of the World War and the subsequent peace negotiations. Petitioner contends that at the end of the taxable year the Treaty of Versailles had definitely failed of ratification and all that remained to decedent was a mere hope that sometime and somehow the respective governments would provide by treaty for payment of the debts. Respondent denies that the debts were ascertained to be definitely worthless and furthermore points out that decedent failed to charge off the debts within the taxable year as required by the statute.

Certain of the German debtors elected to discharge their obligations in 1918, as they were permitted to do under the decrees of the Imperial German Government, by payment of the amounts thereof to the Treuhander, an official corresponding broadly to our Alien Property Custodian. Thereafter there was no longer a debt. The property was transferred from private to public use; it was "confiscated," *Ware* v. *Hylton*, 3 Dall. 199. It follows that a deduction, if allowable, would come within the loss provisions of section 214 (a) (4) or (5). Thus was created a situation which we have already had occasion to consider in the *Appeal of Emil Stern, et al.*, *supra*, wherein we had this to say, in part:

\* \* \* Since no provision was made for the ultimate return of the property or for compensation, the substance of the situation was that possession of and title to the property was taken from the taxpayers and vested in the German Government. All rights of the taxpayers in the property ceased, and it was only in the event that Germany should later, by treaty or otherwise, provide for its return or for compensation that any rights would arise in favor of the taxpayers.

\* \* \* \* \* \* \*

We are accordingly of the opinion that the taxpayers sustained a loss in 1918 which they are entitled to deduct in their returns for that year.

We are of the opinion that the debts which were discharged by payment to the Treuhander in 1918, were definitely lost to decedent

in that year and they are not deductible in the taxable year. Cf. *United States* v. *White Dental Manufacturing Co.*, 274 U. S. 398.

The remainder of the debts owing by German nationals were not confiscated but direct payment of them by the debtors was prohibited by the German Government, so that they were in a state of suspension. Decedent had no present remedy but the right to sue would revive on the restoration of peace, *Hanger* v. *Abbott*, 6 Wall. 532, 538. Being debts, they were deductible, if worthless, in the year in which their worthlessness was ascertained and they were charged off.

With reference to ascertainment of the facts by decedent, it appears that although the state of war with Germany endured technically until July, 1921, it was in 1919 that the ability to communicate with the debtors was restored to decedent and a search of his correspondence files shows that he was advised in 1919 by at least some of the debtors respecting the German decree prohibiting direct payment. In November of the same year the Senate refused to ratify the Treaty of Versailles without reservations. It is true that another vote was taken by the Senate in March, 1920, again resulting in rejection of the treaty. We do not see that anything occurred in 1920 of major significance with reference to the question of the worth of the debts and in our view, if the debts were indeed worthless, they were ascertained so to be by the decedent prior to the taxable year. This being so they are not deductible later. *Avery* v. *Commissioner*, 22 Fed. (2d) 6.

In view of our above opinion, we will be brief relative to the question of the charging off of the debts "within the taxable year." The accounts were only partially written off on the books in 1920. The journal entries are set out in the findings. After a careful consideration of the rather abbreviated explanations in the entries we believe decedent was endeavoring to write down the accounts to what he conceived was their then "actual value." The German debts were payable in marks, the Austrian in Kronen. Marks and Kronen were sadly depreciated in 1919 and 1920. Our conclusion that the debts were not charged off within the year is not altered by the failure of the partnership in the *succeeding year* to take over, or at least to enter upon their books at any value, the debts under consideration.

There is nothing in the record relative to the debt of the Austrian corporation which leads to a conclusion differing from the above.

Taking the record as a whole, we are not convinced of error on the part of the respondent in failing to revise the original return by an allowance of the bad debts claimed.

*Judgment will be entered for the respondent.*